1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

CHIO HANG SAECHAO,

9

Petitioner,

10

v.

11

BRUCE SCOTT, et al.,

12

Respondents.

13

Case No. 2:26-cv-00548-TMC

ORDER DENYING PETITIONER'S
MOTION FOR A TEMPORARY
RESTRAINING ORDER

14

## I.    INTRODUCTION

15

Petitioner Chio Hang Saechao is a Mien refugee who was brought to the United States in

16

1979, when he was nine months old. Petitioner's father fought for the United States-aligned

17

"Secret Army" in Laos and was forced to flee the country after the Army's defeat in 1975. Born

18

in a refugee camp in Thailand, Petitioner is not a citizen of any country. Petitioner also has a

19

seizure disorder and was born with limb deformities that limit his ability to work.

20

Petitioner was convicted of theft and robbery in 2001, and, since 2008, has been subject

21

to a final order of removal to Laos by an Immigration Judge ("IJ"). The government was unable

22

to deport Petitioner to Laos, however, and he remained in the U.S. for 17 years. He has three

23

children and a partner who are U.S. citizens; his parents and siblings all live in the United States

24

as citizens or permanent residents. He has never known a life outside of this country. Now,

Respondents have detained Petitioner at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") with plans to deport him to Laos—despite Petitioner not speaking Lao, not being a Laotian citizen, and having no family in Laos. Respondents did not provide notice or a pre-deprivation hearing before detaining him.

Petitioner filed suit under 28 U.S.C. § 2241 seeking release from physical custody, arguing that his detention violates his Due Process rights and has become indefinite in violation of the Immigration and Nationality Act ("INA"). Dkt. 1. In the present motion, Petitioner seeks a temporary restraining order ("TRO") to prevent his transfer outside of this District and imminent removal from the United States. Dkt. 10.

Petitioner has not met the standard for a TRO. Although many would find Respondents' decision to prioritize Petitioner's removal a cruel and senseless exercise of their prosecutorial discretion, that decision is not unlawful, and it is beyond the reach of this Court's power. It is therefore unlikely Petitioner will succeed on the merits of his habeas petition, and the Court thus DENIES his motion for a TRO. Dkt. 10.

## II.    BACKGROUND

Petitioner is a stateless Mien refugee who was born in Thailand in 1978 after his parents fled Laos in 1975. Dkt. 1 ¶ 1. Petitioner's father had served in General Vang Pao's U.S.-aligned "Secret Army" before Communist forces took control of Laos. *Id.* Petitioner was admitted to the United States as a refugee when he was nine months old, adjusting to lawful permanent resident status shortly after. *Id*. ¶¶ 1, 14. Petitioner has three children, ranging in age from 11 to 26, and a partner who is a U.S. citizen. Dkt. 11 ¶¶ 2–5. He and his family, all of whom are U.S. citizens or permanent residents, reside in Oregon. *Id.* Petitioner was born with limb deformities that have impacted his ability to work throughout his life. *Id.* ¶¶ 7, 9. He also has a seizure disorder that requires frequent medication and ongoing management. *See* Dkt. 21 ¶¶ 5, 7; Dkt. 12-1.

Petitioner was convicted for robbery and theft in 2001, and he was ordered removed to Laos by an IJ on December 3, 2008. Dkt. 1 ¶ 19. United States Immigration and Customs Enforcement ("ICE") was "unable to remove Petitioner to Laos at the time." Dkt. 8 ¶ 7. After ICE failed to remove Petitioner, he was released under an order of supervision ("OSUP") on May 28, 2009. *Id*. ¶ 7. Petitioner was later convicted of driving under the influence in 2012, coercion constituting domestic violence in 2016, assault in the 4th degree in 2016, and driving under the influence and assault in the 4th degree again in 2024. Dkt. 8 ¶ 5.

Petitioner asserts that "Laos has historically failed to accept back its removeable nationals" and there are "nearly 5,000 individuals in the United States with removal orders to Laos that the U.S. government has been unable to execute." Dkt. 1 ¶¶ 30–32 (quoting Proclamation No. 10949, 90 Fed. Reg. 24497 (June 4, 2025)). But Respondents argue that "ICE is presently removing individuals to Laos," and they have taken steps towards Petitioner's removal. Dkt. 8 ¶¶ 8–16.

In opposition to the habeas petition, Respondents submitted a declaration from Yralees Melendez, a Deportation Officer who works for ICE's Office of Enforcement and Removal Operations ("ERO") at NWIPC. *Id*. Melendez averred that ERO began the process of obtaining a travel document for Petitioner's deportation on October 9, 2025. *Id*. ¶ 9. ERO submitted a travel document request for Petitioner's removal to Laos on January 7, 2026, and received that travel document on January 30. *Id*. ¶¶ 12–13. After obtaining the travel document, ICE detained Petitioner during a regularly scheduled check-in on February 5, 2026. *Id*. ¶ 14; Dkt. 1 ¶ 21. Melendez stated that "Petitioner is manifested for a charter flight to Laos on March 15, 2026. It is anticipated that Petitioner will be transferred out of the NWIPC prior to that date to be staged for removal." *Id*. ¶ 15.

At 9:20 A.M. on February 24, 2026, Respondents notified Petitioner's counsel that they intended to move him outside of the District within 48 hours "to stage him for removal to Laos." Dkt. 10 at 3. Petitioner moved for a TRO on February 25, 2026, asking this Court to order his immediate release so he could reopen his immigration proceedings to claim fear-based protection against removal to Laos and readjust his status through his adult U.S. citizen child. *Id.* at 19. Petitioner also seeks additional time outside of detention so that, if he fails to obtain protection against removal, he can arrange for safe relocation to Laos considering his epilepsy that requires ongoing medical care. *Id.* at 4–5, 19.

Based upon Respondents' agreement not to remove Petitioner until March 6, 2026, the Court granted Respondents' request for an extension of time to respond to the TRO. Dkts. 14, 15. They filed their response on February 27, 2026, and Petitioner filed his reply on March 2. Dkts. 18, 20.

### III.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens[1] subject to final orders of removal. 533 U.S. 678, 699 (2001). Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat." *Id.* As the

---

[1] "This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

Court recognized, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* The Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

Moreover, a party seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *United States v. City of Seattle*, 474 F. Supp. 3d 1181, 1185 (W.D. Wash. 2020) ("The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction."). When a party seeks a TRO against the government, the third and fourth factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). "Likelihood of success on the merits is the most important factor; if a movant fails to meet this threshold inquiry," the court "need not consider the other factors." *Geo Group v. Inslee*, 151 F.4th 1107, 1114 (9th Cir. 2025).

## IV.     DISCUSSION

**A.     Likelihood of success on the merits**

*1.     Petitioner's detention has not become indefinite.*

Petitioner has lived in the United States for 47 years—since he was only nine months old. Dkt. 1 ¶ 1. He is entitled to the protections of the Due Process Clause. *See Zadvydas*, 533 U.S. at 693.

It has been 17 years since the government initially failed to remove Petitioner to Laos, and he has been detained for a cumulative six months since an IJ ordered his removal. Dkt. 1 ¶ 19; Dkt. 8 ¶¶ 6–7, 14. Petitioner's continued detention is therefore not "presumptively reasonable." *Zadvydas*, 533 U.S. at 701.[2] Petitioner's initial evidence showing (1) the government's failure to deport him for 17 years, Dkt. 1 ¶ 78; (2) statements by the United States government that "Laos has historically failed to accept back its removeable nationals," *id*. ¶ 31 (quoting Proclamation No. 10949, 90 Fed. Reg. at 24502); and (3) strict limitations placed by Laos on the number of deportees it accepts, *id*. ¶¶ 32–35, "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden thus shifts to the government to "respond with evidence sufficient to rebut that showing." *Id*. Respondents have met that burden by showing that Petitioner will likely be removed to Laos on or about March 15, 2026.

Through Melendez, Respondents provided evidence that (1) they resumed the process of deporting Petitioner as early as October 9, 2025; (2) they received a travel document for Petitioner's removal to Laos on January 30, 2026; (3) they only detained Petitioner after receiving his travel document; and (4) Petitioner "is manifested for a charter flight to Laos on March 15, 2026." Dkt. 8 ¶¶ 8–15. Respondents also submitted to the Court a copy of Petitioner's travel document—a Laissez-Passer issued by the Laotian embassy on January 30, 2026. Dkt. 9-7. The document states that it "is used as a Passport and issued for an Individual to enter the Lao

---

[2] Petitioner proposes that the six-month "presumptively reasonable" grace period ran continuously once Petitioner's removal order was final, regardless of whether Petitioner was detained or not. Dkt. 1 at 23 (citing *Tran v. Bondi*, No. C25-01897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025)). The Court need not resolve that issue here, because, even under a standard that only runs while Petitioner is detained, the presumptively reasonable period has expired.

PDR for a single journey only and has a validity of 90 days from the date of issue." *Id.* This evidence is sufficient to show Petitioner's removal to Laos is reasonably foreseeable and that he is unlikely to succeed on the merits of his *Zadvydas* claim. Respondents' evidence is also sufficient to show that Petitioner is unlikely to succeed on his claim that Respondents failed to follow their own regulations governing re-detention. *See* Dkt. 1 at 24–26.

  2. *Petitioner was not entitled to a pre-deprivation notice or hearing.*

  Petitioner also argues that "Respondents were required to provide Petitioner with a pre-deprivation notice and a hearing before re-detaining him, given that he has remained fully compliant with his order of supervision and release conditions." Dkt. 1 ¶ 106.

  "Before revoking supervised release and re-detaining a noncitizen, the Government must satisfy procedural due process." *Vo v. Scott*, No. 2:26-CV-00135-JNW, 2026 WL 445046, at *4 (W.D. Wash. Feb. 17, 2026). Courts in the Ninth Circuit have considered procedural due process claims like Petitioner's under *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025). *Mathews* requires courts to consider these three factors when determining whether a government action complies with procedural due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 334–35.

  The first factor weighs against Petitioner's argument that pre-deprivation notice and a hearing were required. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Fifth

Amendment's Due Process Clause. *Zadvydas*, 533 U.S. at 690. But as Respondents point out, a noncitizen's liberty interest in remaining in the community is reduced when they are subject to a final, executable order of removal. *See* Dkt. 7 at 10 ("Petitioner's release on OSUP was always subject, in part, to (1) ICE's inability to remove him at that time and (2) him not committing any crimes."). This is especially so when removal is reasonably foreseeable, and detention in service of removal no longer violates the INA as construed in *Zadvydas*. Because ICE did not detain Petitioner until it had secured a travel document for his removal to Laos, his liberty interest in freedom from immigration detention was significantly reduced.[3]

The second factor also weighs against Petitioner. Although he points to several cases requiring pre-deprivation notice and hearing, none of them involved a petitioner with a final removal order and strong evidence of imminent removal (such as ICE's receipt of a travel document). *See* Dkt. 20 at 3 (citing *Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *8–9 (W.D. Wash. Oct. 7, 2025); *Mbunga v. Bondi*, No. 2:26-CV-00113, 2026 WL 323056, at *3 (W.D. Wash. Feb. 6, 2026); *Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *5 (W.D. Wash. Nov. 25, 2025)).

Here, although the consequences to Petitioner from removal to Laos are drastic, the risk that his detention is an erroneous deprivation of his liberty is limited. Because ICE did not detain Petitioner until it had secured a travel document, it is unlikely that detaining him to facilitate that removal is erroneous, even without a hearing. If Respondents fail to remove Petitioner and his detention *is* erroneous, he may seek relief under *Zadvydas*. This post-deprivation remedy, along

---

[3] It is also undisputed that Petitioner was convicted of additional crimes while subject to the OSUP, and this may have been an additional basis for revocation. But the record is clear that Petitioner was not detained until his removal became reasonably foreseeable through issuance of the travel document. This Order expresses no opinion on what procedural due process requires for detention based on OSUP violations when removal is still not reasonably foreseeable.

with the agency's regulations governing re-detention, is likely sufficient to protect Petitioner's liberty interest in being free from indefinite detention when removal is not foreseeable.

Petitioner also argues that removal to Laos may itself be an erroneous deprivation if he cannot reopen his immigration proceedings and pursue a fear-based claim against removal. Dkt. 10 at 11. As Respondents note, however, the Court does not have jurisdiction to prevent or delay removal to Laos on this basis. Dkt. 18 at 3–4. Under 8 U.S.C. § 1252(g), this Court lacks jurisdiction to review "the decision or action by the Attorney General to . . . execute removal orders . . . ." This bars review of the executive's discretion to decide both "whether" and "when" to execute a valid removal order. *Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022) (quoting *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020)). In *Rauda*, the Ninth Circuit held that district courts lack jurisdiction to enjoin execution of a removal order pending a decision on a noncitizen's motion to reopen their immigration proceedings. 55 F.4th at 777–78. There is no meaningful distinction between *Rauda* and Petitioner's request that execution of his removal order be stayed so that he can file a motion to reopen. *See* Dkt. 10 at 3–4. Similarly, Petitioner's request that he be released from custody so that he can make his own arrangements for departure to Laos goes solely to the executive's discretion over whether and when to execute his removal order. While Petitioner's proposal might reflect a more humane approach to immigration enforcement, it is beyond the authority of this Court.

The Court is cognizant that Petitioner has serious medical conditions which may not receive proper medical care in Laos—especially considering that he may face persecution "because of his father's role in the Secret Army that fought alongside the United States." Dkt. 10 at 3–6, 16. But *Mathews* requires that Petitioner demonstrate flaws in the government's deportation procedures, rather than the substance of the IJ's removal order or the executive's decision to enforce it. *See Mathews*, 424 U.S. at 334–35. For the second *Mathews* prong, that

means showing the risk of an erroneous deprivation *due to such a procedural failure. See id.* at 335.[4] Petitioner has not made such a showing here.

The third and final factor similarly favors Respondents. The government "has a legitimate interest in ensuring that a noncitizen subject to a final order of removal appears when necessary to facilitate removal." *See Saelee v. Bondi*, No. 2:25-CV-02677-TLF, 2026 WL 221513, at *6 (W.D. Wash. Jan. 28, 2026) (citing *Tran v. Bondi*, No. 2:25-CV-02335-DGE-TLF, 2025 WL 3725677, at *3 (W.D. Wash. Dec. 24, 2025)). Stronger yet is that interest where, as here, the government has shown that removal is likely to occur in the reasonably foreseeable future. *But see id.* at *7 (holding that "the government's interest in re-detaining a noncitizen, who has not violated the terms of their release nor whose removal has not been established to be likely to occur in the reasonably foreseeable future, without a pre-detention hearing or some other pre-detention process is low.").

Although Respondents provided "effectively no pre-detention process," *Tran*, 2025 WL 3725677, at *6, the *Mathews* factors fall in their favor because they did not seek to detain Petitioner without a hearing until they had made concrete arrangements for his removal. The cascade of effects from that imminent removal, however serious, are the result not of unlawful procedures but rather the executive's discretionary choices. Accordingly, Petitioner is unlikely to succeed on the merits of this claim.

---

[4] *See also Sorio v. Hermosillo*, No. 2:25-CV-02492-TL, 2026 WL 413530, at *7 (W.D. Wash. Feb. 13, 2026). In *Sorio*, ICE denied a stay of removal for a noncitizen who had severe and acute medical conditions. *Id.* at *4–6. The court had jurisdiction to review Sorio's claim arising from the denial under *Mathews* because it "challenge[d] as unconstitutional the fact that he had no appeal process for his stay of removal request" and was not a "direct attack on ICE's discretionary denial of his stay request." *Id.* at *7. The court found on the merits that Sorio had not shown a procedural due process violation. *Id.* at *8.

3.      *Petitioner has not shown that he is at risk of punitive removal to a third country.*

Petitioner initially argued that he was at risk of punitive removal to a third country. Dkt. 1 ¶¶ 41–54, 101–104. But Petitioner will likely to be removed to Laos, the country to which an IJ ordered his removal. Dkt. 9-3. Absent any evidence that the government will try to remove him elsewhere, the Court cannot conclude that "without an injunction, Petitioner faces a likelihood of removal to a third country with no meaningful opportunity to challenge that decision." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 737 (W.D. Wash. 2025).

4.      *Petitioner has not shown that his detention prior to removal is unconstitutionally punitive.*

In his motion for a TRO, Petitioner argues that even if his removal is likely to occur soon, his detention is punitive because it (1) included three weeks when removal was *not* likely and (2) subjects him to poor medical treatment at NWIPC. Dkt. 10 at 14–15, Dkt. 20 at 5–6.[5]

First, Petitioner argues that "it was not significantly likely in the reasonably foreseeable future that he would be removed at the time of his detention," because the government had not yet scheduled Petitioner's flight to Laos. Dkt. 10 at 14–15. Mootness considerations aside, this argument fails because when Petitioner was detained, the government had already received a travel document for his deportation to Laos. Dkt. 8 at 3.

Second, Petitioner argues that "detention at NWIPC is unsafe for [Petitioner] and injurious to his health." Dkt. 20 at 6. Petitioner suffers from epilepsy requiring daily

---

[5] Petitioner's initial habeas petition did not raise a substantive due process claim based on inadequate medical care. *See* Dkt. 1 at 33–37. It is therefore questionable whether the Court's equitable power in this TRO motion encompasses relief on that basis. "A court's equitable power lies only over the merits of the case or controversy before it. When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pacific Radiation Oncology, LLC v. Queen's Medical Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). But because the relief sought by Petitioner—release from custody—is "of the same character as that which may be granted finally," the Court concludes that the relationship between the emergency motion and the underlying claims is "sufficiently strong." *Id.*

anticonvulsants, high blood pressure, an undiagnosed stroke condition, and "deformities in his hand and leg that restrict his mobility in both limbs." Dkt. 10 at 5 (citing Dkts. 12-1, 12-2).

Petitioner asserts several shortcomings in NWIPC's medical care: he was detained for three days before the facility provided seizure medication, he has experienced seizures while detained, he received lower quality medication that upset his stomach, and he was delayed in his attempts to obtain prescription glasses. *Id.* at 5–6, Dkt. 21 at 3. Respondents submitted a declaration by NWIPC's Clinic Director asserting that Petitioner failed to take his seizure medication and refused to allow a diagnostic blood draw, and Petitioner submitted his own declaration disputing that account. *See* Dkts. 19, 21. In a later filing, Petitioner adds that his blood work shows elevated glucose levels, and he is experiencing high blood pressure. Dkt. 22. In any event, Petitioner does not show that any failures by NWIPC's medical staff "were intended to punish him, or were excessive in relation to legitimate non-punitive purpose served by his detention." *Sorio*, 2026 WL 413530, at *7 (citing *Jones v. Blanas*, 393 F.3d 918, 934 (9th Cir. 2004)). While Petitioner would almost certainly receive better care in the community, he has not shown "objectively unreasonable failures of care," nor the severe consequences from such failure that indicate a violation of substantive due process. *Id.* at *10 (finding detention was punitive where NWIPC's errors "more likely than not resulted in permanent disability, including the loss of [the petitioner's] toe and part of his foot").

### 5. *Petitioner's Administrative Procedure Act ("APA") claim fails for lack of subject matter jurisdiction.*

Finally, Petitioner claims that Respondents violated the APA by revoking Petitioner's OSUP and detaining him. Dkt. 1 ¶¶ 115–17. Petitioner does not contest Respondents' arguments, however, that this claim lacks subject matter jurisdiction because there is an adequate and exclusive statutory remedy through habeas relief. Dkt. 7 at 13 ("federal courts lack jurisdiction

over APA challenges whenever Congress has provided another 'adequate remedy'") (quoting

*Brem-Air Disposal v. Cohen*, 156 F.3d 1002, 1004 (9th Cir. 1998)). Because Petitioner seeks

relief via habeas corpus, his APA claim fails for lack of jurisdiction.

**B.    Irreparable harm, balance of equities, and the public interest**

Because Petitioner cannot show a likelihood of success on the merits, or serious questions

going to the merits, the Court does not consider the remaining *Winter* factors. *Geo Group*, 151

F.4th at 1114.

**V.    CONCLUSION**

For these reasons, the Court DENIES Petitioner's motion for a TRO. Dkt. 10.


Dated this 5th day of March, 2026.


Tiffany M. Cartwright
United States District Judge

ORDER DENYING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER - 13